UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDDIE S.,[1]

                              Plaintiff,                    DECISION AND ORDER

-vs-

                                                          24-CV-0391-MAV

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

In April 2024, Eddie S. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 12 (Plaintiff); ECF No. 14 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied. The Commissioner's motion [ECF No. 14] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

## I. Plaintiff's Applications

Plaintiff filed his application for SSI in March 2021, alleging a disability onset date of March 2, 2020. Administrative Record ("AR"), 189,[2] ECF No. 6. He identified several impairments that he claimed limited his ability to work, including: major depression, intermittent explosive disorder, schizophrenia, and an abdominal hernia. AR at 314. In September 2021, the Commissioner found that Plaintiff was "not disabled," and his claim for SSI payments was denied. AR at 61–83. Plaintiff requested a reconsideration of the initial determination, and in January 2022 was again found "not disabled." AR at 84–108.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his applications at the initial level and on reconsideration, Plaintiff appeared by telephone on March 10, 2023 for a hearing before an Administrative Law Judge ("ALJ"). AR at 35. Plaintiff's attorney made an opening statement as follows:

> My client at the onset of his claim was a younger individual. He's no[w] clos[ely] approaching advanced age. It's my understanding he has a limited 11th grade education, and he's alleging disability on a series of mental health with some physical health impairments . . . . [H]e has a history of major depressive disorder with psychosis. He has complaints of hearing voices. He has suicidal ideation as well as substance use. Substance use has been in remission. He is on maintenance medicines. He has been successful for periods of time while still having very severe symptoms. He also has a history of an ankle fracture from when he had a suicide attempt where he ended up going out a window . . . . I believe that because of his mental health, he would likely be a candidate for the C Criteria for the depressive disorder. It seems to me he's not able to function outside of consistent treatment. And I believe that he would be

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

> unable to maintain any employment in the national economy because the need for treatment would keep him off task or absent from work greater than 20 [percent of the time] or far more than four days per month.

AR at 39–40.

Plaintiff testified that he was able to dress and bathe himself, but that he had to sit down to put on jeans because his legs were "messed up." AR at 42–43. He stated that his mother still did his laundry, but that he lived on his own and was able to vacuum, clean his bathroom, wash his dishes, and take a medical cab daily to a methadone clinic. AR at 42, 44, 46. He also stated that he had nightmares mostly every day, still heard voices throughout the day, did not shop for himself, and needed his sister to manage his finances. AR at 47–48. Other than visiting the methadone clinic each day, Plaintiff spent his days at home watching television and listening to music. AR at 51.

The ALJ also heard testimony at the hearing from vocational expert Peter Manzi (the "VE"). AR 55–58. When asked if there were jobs in the national economy that could be performed by a hypothetical claimant with the residual functional capacity[3] ("RFC") identical to that which Plaintiff was ultimately determined to have, the VE opined that the hypothetical claimant could perform work as a garment folder, a photocopying machine operator, and a bagger (laundry). AR 56–57. However, as relevant here, the VE testified that there was no work that such a claimant could perform if he could not have any personal contact at all with supervisors, coworkers,

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

or the general public, or if he exceeded 15 percent time off task. AR at 57–58.

## III. The ALJ's Decision

On June 5, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for SSI. AR at 30.

While a claimant for Disability Insurance Benefits is eligible for payment from the onset date of his or her disability, an SSI claimant will only receive payments beginning the month after his or her application date. *See* 20 C.F.R. § 416.501. Thus, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of March 8, 2021. AR at 19.

At step two, the ALJ determined that Plaintiff had the following severe impairments: left pubic rami (pelvic bone) fracture; mild degenerative changes of the left ankle and sequela of a left ankle fracture; major depressive disorder; posttraumatic stress disorder (PTSD); intermittent explosive disorder; cannabis

---

[4] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

4

dependence; cocaine dependence; opioid dependence; and alcohol abuse. AR at 19–20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 ("the Listings"). AR at 36. In making this assessment, the ALJ considered the musculoskeletal impairments in Listings 1.00 *et seq.*, but found the requirements of the listing were not satisfied. AR at 20–21. Additionally, the ALJ performed the "special technique" outlined in 20 C.F.R. § 416.920a to assess whether Plaintiff's mental impairments satisfied the criteria for a depressive disorder (Listing 12.04), an anxiety disorder (Listing 12.06), a personality or impulse-control disorder (Listing 12.08), or a trauma-related disorder (Listing 12.15). AR at 36. However, the ALJ found that Plaintiff had no more than moderate limitations in any of the four areas of mental functioning identified in 20 C.F.R. § 416.920a(c),[5] and therefore did not satisfy the "paragraph B" criteria of the listings.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> In an eight-hour workday, he can sit for 6 hours, stand and walk for a total of 6 hours; lift/carry 20 pounds occasionally, and 10 pounds frequently; and occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple instructions; use judgment to make simple work-related decisions; adapt to routine and occasional changes in the workplace; and perform

---

[5] The four broad functional areas in which the ALJ rates the degree of a claimant's mental functional limitations under 20 C.F.R. § 416.920a are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3).

a job with occasional close interpersonal contact with supervisors and coworkers, and none with the general public.

AR at 21.

At step four, the ALJ found that Plaintiff had no past relevant work. AR at 29. Nevertheless, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, namely a garment folder, a photocopy machine operator, and a bagger. AR at 29–30. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to SSI payments. AR at 30.

On March 1, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 1382c(a)(3)(A), a claimant is disabled and entitled to SSI if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 423(d) (setting forth the same definition of "disabled" for DIB eligibility).

Where an individual's application for SSI has been denied, 42 U.S.C. § 405(g)

defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by

7

"substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In his motion for judgment on the pleadings, Plaintiff argues that the ALJ erred when he found limitations identified in the consultative examiner's opinion and the state consultants' findings to be supported by and consistent with the record, but failed to reconcile those limitations with the RFC determination. ECF No. 12-1 at 9–12. Plaintiff also argues that the ALJ's use of the phrase "close, interpersonal contact" in the RFC and in his questions to the VE was too vague to constitute substantial evidence to carry the agency's burden at step five. ECF No. 12-1 at 12–14. The Commissioner maintains that the ALJ did not commit legal error, and that the RFC determination was based on substantial evidence. ECF No. 14-1.

After a thorough review of the record, the Court agrees with the Commissioner

8

that the ALJ applied the proper legal standards, and made an RFC finding that was supported by substantial evidence.

## I. Plaintiff's Limitations Due to Mental Health Impairments

In a psychiatric evaluation based on her examination of Plaintiff in August 2021, consultative psychological examiner Christine Ransom, Ph.D., reported the results of her mental status exam. AR at 614–18. She stated that Plaintiff was cooperative, socially appropriate, neatly but casually dressed, adequately groomed, fluent and intelligible, and oriented to person, place, and time. AR at 615–16. She also stated that although Plaintiff expressed moderately pressured speech and affect during the exam, his thought processes were coherent and goal-directed, his attention and concentration were intact, his immediate and remote memory were intact, his intellectual functioning was in the low average range, and his insight and judgment were good. *Id.* Plaintiff reported that he could dress, bathe and groom himself, cook and prepare food, do cleaning, laundry and shopping, manage money, and ride the bus independently. AR at 616. Based on this exam, Dr. Ransom opined that Plaintiff would experience moderate limitation interacting with others, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, and regulating emotion, controlling behavior, and maintaining well-being. AR at 617. The prior administrative medical findings by state psychological consultants L. Haus Psy.D. and L. Dekeon Ph.D. also indicated that Plaintiff had moderate limitations in all four areas of the Paragraph B criteria except understanding, remembering, or applying information. AR at 68, 93.

9

In challenging the ALJ's decision, Plaintiff focuses particularly on Dr. Ransom's opinion that Plaintiff was moderately limited in sustaining an ordinary routine and attendance at work. ECF No. 12-1. Plaintiff further points out that the ALJ found Dr. Ransom's opinion both supported by and consistent with the record, and therefore "partially persuasive," but did not include restrictions in the RFC to account for those limitations and did not explain why such restrictions were not included. *Id.* He argues that this error was harmful, because the moderate limitations would cause time off task and absenteeism, and the VE testified that more than 15% of time off task or absence from work would be work-preclusive. *Id.* Plaintiff further notes that the ALJ also failed to explain why he did not incorporate the moderate limitations found by Dr. Haus and Dr. Dekeon. *Id.*

In response, the Commissioner maintains that the ALJ's RFC determination was supported by substantial evidence, and that the ALJ's decision did in fact explain his treatment of the moderate limitations at issue.

**A. Legal Principles**

As noted above, after an ALJ finds at step three of the five-step sequential evaluation process that a claimant's impairments do not meet or medically equal a listing, the ALJ must proceed to make a finding regarding the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(ii)–(iv). An RFC finding is a determination of the most that the claimant can do in a work setting despite his limitations, and is based on an assessment of all of the relevant medical and other evidence in the record. 20 C.F.R. § 416.945(a)(1), (3). At the hearing stage, the ALJ bears the exclusive responsibility

for assessing the claimant's RFC. 20 C.F.R. § 416.946(c). Thus, the RFC finding is an administrative, rather than a medical, determination. *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021). As such, it is within the discretion of the ALJ to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

To be sure, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill,* No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Consequently, "[r]emand may be warranted where a court is 'unable to fathom the ALJ's rationale in relation to [the] evidence in the record.'" *Kristin H. v. Comm'r of Soc. Sec.*, No. 23-CV-6692-FPG, 2025 WL 461452, at *3 (W.D.N.Y. Feb. 11, 2025) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Nevertheless, the regulations make clear that the ALJ – not medical sources or state consultants – is responsible for determining whether or not a claimant is disabled under the law. 20 C.F.R. § 416.920b(c)(3). Thus, "the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole." *Blanford v. Dudek*, No. 24-2097-CV, 2025 WL 1288082, at *2 (2d Cir. May 5, 2025) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)). The RFC need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision, so long as it is supported by substantial evidence." *Schillo,* 31

11

F.4th at 78; *accord. Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Provided that "'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,' remand is not warranted." *Kristin H.*, 2025 WL 461452, at *3 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## B. Application

Plaintiff's argument that the ALJ failed to adequately reconcile the limitations opined by Dr. Ransom, Dr. Haus, and Dr. Dekeon with his RFC determination, or was required to provide a more complete explanation of his RFC determination, is without merit. The ALJ's decision adequately explained the RFC restrictions he formulated to address Plaintiff's mental limitations, and his RFC determination is supported by substantial evidence.

To begin with, in performing the "special technique" with respect to the paragraph B criteria at step three, the ALJ found that Plaintiff had a moderate limitation in the area of concentrating, persisting, or maintaining pace, and cited directly to Dr. Ransom's consultative examination. AR at 20–21 (citing, *inter alia*, AR at 614–18). Under the Listings, this area of mental functioning "refers to the abilities to focus attention on work activities and stay on task at a sustained rate," including "sustaining an ordinary routine and regular attendance at work . . . ." Listing 12.00E(3). The ALJ observed that Plaintiff had reported numerous psychiatric symptoms, but also that his mental status examinations repeatedly showed objectively normal attention and concentration. AR at 21 (citing numerous instances in the record). Therefore, the ALJ concluded that "[b]ased on the medical record and

12

the claimant's self-described activities, he has a moderate limitation[6] of the ability to focus attention on unskilled work activities and stay on task on a sustained basis." *Id.* This finding was consistent with Dr. Ransom's opinion, and the prior administrative findings of Dr. Haus and Dr. Dekeon.

More to the point, the ALJ's RFC explanation itself included a thorough, multi-page analysis of the medical and non-medical evidence, Plaintiff's symptoms, and medical opinion evidence during the relevant period, that drew clear conclusions supported by substantial evidence. Of particular significance, the ALJ discussed treatment records from Plaintiff's mental health and substance abuse treatment at Evergreen and Spectrum Health.

The ALJ recounted that in March and May 2021, the treatment notes indicated that Plaintiff demonstrated anxious affect, but had relatively normal mental status examinations. AR at 24 (citing AR at 769, 775). In June 2021, however, Plaintiff was using cocaine, heroin, and alcohol, and jumped out of his second story window, fracturing his pelvis. AR at 24 (citing AR at 523–80). After recovery and "determin[ing] never to use drugs again," Plaintiff presented during treatment at Evergreen in July 2021 with normal affect, and no sign of anxiety, depression, or agitation. AR at 24 (citing AR at 586–604).

Between August 2021 and December 2021, Plaintiff reported to mental health treatment at Spectrum Health, and demonstrated a persistently anxious affect but

---

[6] The Listings provide that "moderate" limitation indicates that a claimant's functioning in that particular area "independently, appropriately, and effectively, and on a sustained basis is fair." Listing 12.00F(2)(c).

had otherwise normal mental status examinations. AR at 24–26 (citing AR at 791, 793). In December 2021, Plaintiff became non-compliant with his mental health treatment and relapsed into substance abuse, at which time his symptoms became exacerbated. AR at 25 (citing AR at 816, 826). However, once Plaintiff was again compliant with treatment, he returned to normal mental status examination findings through June 2022. AR at 25 (citing 831, 834–39). Plaintiff relapsed again in July 2022 and was belligerent with hospital staff, but again improved with medication and treatment compliance from July 2022 through December 2022. AR at 25–26 (citing AR at 843, 847, 851, 858, 862, 874, 884, 898–990 (esp. 988)).

> The ALJ summarized the conclusions he drew from these records:
>
> Psychiatrically, the claimant has depressive and anxiety disorders, polysubstance abuse disorders, as well as a diagnosis of intermittent explosive disorder. However, there is no evidence of vegetative depression, uncontrolled anxiety, or recurring mood swings, even with the substance abuse and noncompliance with medication. In the two-year period at issue in this claim, the record documents only two episodes of inappropriate or injurious behavior, once in 2021 when the claimant jumped out a window because he imagined he was being attacked, and once in 2022 when he was agitated and yelling at hospital staff. Notably, both episodes occurred in the setting of polysubstance abuse. The mental health treatment records document that the claimant reported worsening symptoms when he was noncompliant with prescribed medication, and that his symptoms improved when he restarted medication. More often than not, the claimant presented with appropriate behavior and essentially normal mental status examination findings.

AR at 26. Based on these conclusions, the ALJ found that Plaintiff's mental impairments limited the extent to which he could work at the light level of exertion, and addressed the mental limitations by "limit[ing] [Plaintiff] to simple work, and simple work-related decisions; and out of an abundance of caution . . . to occasional

14

close interpersonal contact with supervisors and co-workers, and no close interpersonal contact with the public." AR at 27.

The Second Circuit recently stated that it is "well-established that . . . moderate limitations do not prevent individuals from performing 'unskilled work.'" *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (quoting *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010)); *see also Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *2 (2d Cir. Nov. 7, 2024); *Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (concluding that an ALJ's RFC assessment appropriately accounted for moderate limitations even without including restrictions related to staying on task or attendance). Indeed, "[i]t is well-settled that an RFC for simple work with limited interaction with others adequately accounts for mild-to-moderate mental functional limitations." *Nicole B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00900 EAW, 2024 WL 3754900, at *5 (W.D.N.Y. Aug. 12, 2024) (citing *Bethany A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1267 (WBC), 2022 WL 170405, at *5 (W.D.N.Y. Jan. 18, 2022); *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021)). *See also Tashona R. D. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00583 (AMN/CFH), 2024 WL 4442722, at *6 (N.D.N.Y. Aug. 12, 2024), *report and recommendation adopted*, No. 5:23-CV-00583 (AMN/CFH), 2024 WL 4274819 (N.D.N.Y. Sept. 24, 2024).

Accordingly, the Court finds that in the present case, the limitation to simple work with limited interaction with others adequately accounts for Plaintiff's moderate mental functional limitation in the area of concentrating, persisting, or

maintaining pace. As described above, the ALJ supported his RFC determination with substantial evidence, and the Court is not permitted to re-weigh the evidence. *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.")

## II. "Close, Interpersonal Contact"

Plaintiff notes that in addition to finding that Plaintiff was moderately limited in the area of concentrating, persisting, or maintaining pace, the ALJ also found that Plaintiff had a moderate limitation interacting with others. ECF No. 12-1 (referencing AR at 21). In that regard Plaintiff maintains the ALJ committed harmful error by addressing this limitation through a "vague" RFC restriction to only occasional "close interpersonal contact" with supervisors, which was not expressed in terms of work-related functions. In particular, Plaintiff argues that because of the ambiguity of the term, it is not clear that the ALJ and the VE understood "close interpersonal contact" to mean the same thing, and therefore the testimony elicited from the VE cannot serve as substantial evidence upon which the ALJ's step five finding may be based.

In response, the Commissioner argues that the regulations do not confine the ALJ to a "set of canned phrases," and that the term "close interpersonal contact" is self-explanatory.

### A. Legal Principles

If the analysis reaches the fifth and final step of the five-step sequential

process for determining whether a claimant is disabled, the Commissioner bears the burden of demonstrating that there is other work in the national economy that the claimant can perform. 20 C.F.R. § 416.969(a); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the Medical Vocational Guidelines – or "Grids" – found at 20 C.F.R. Part 404, Subpart P, App'x 2 do not help the ALJ determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy, the ALJ can make his step five determination by adducing VE testimony. *McIntyre*, 758 F.3d at 151.

The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his [or her] opinion and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (quotation marks and citations omitted); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir.1983). However, the VE's response to an inadequate hypothetical question cannot constitute substantial evidence to support a conclusion of no disability. *Slattery v. Colvin*, 111 F. Supp. 3d 360, 375 (W.D.N.Y. 2015) (citation omitted).

### B. Application

Here, the ALJ presented the VE with a hypothetical which included the following limitation, among others: "can perform a job with occasional close, interpersonal contact with supervisors and coworkers and . . . none with the general public." AR at 56. Contrary to Plaintiff's argument, the Court finds the words "close, interpersonal contact" to be adequately clear in meaning. *See Slattery*, 111 F. Supp.

17

at 376 (rejecting claim that hypothetical was vague where the VE "understood the question and did not need clarification").

For one, at least as far back as 1985, the Commissioner has used similar language "[t]o state the policy and describe the issues to be considered when an individual with a mental impairment requires an assessment of the residual functional capacity (RFC) in order to determine the individual's capacity to engage in basic work-related activities." *Residual Functional Capacity for Mental Impairments*, SSR 85-16, 1985 WL 56855 (S.S.A. 1985). In SSR 85-16, for example, the Commissioner noted that "evidence that an individual is markedly withdrawn or seclusive suggests a greatly reduced capacity for *close contact* and interaction with other people . . . ." SSR 85-16, 1985 WL 56855 at *3 (emphasis added). It is no surprise, then, that courts in this Circuit even in recent times have affirmed RFC determinations limiting claimants' ability for "close interpersonal contact" with supervisors, coworkers, or the general public. *See, e.g., Rodriguez v. Berryhill*, No. 18-CV-05238 (KHP), 2019 WL 4010397, at *19 (S.D.N.Y. Aug. 26, 2019) (finding the ALJ's RFC determination involving "occasional close interpersonal contact with supervisors or coworkers, and no close contact with the general public" to be supported by substantial evidence); *see also, e.g, Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-6558 (BCM), 2022 WL 992889, at *7 (S.D.N.Y. Apr. 1, 2022); *Marcial v. Saul*, No. 20-CV-06170 (ALC), 2022 WL 970516 (S.D.N.Y. Mar. 31, 2022).

Moreover, the VE in the present case did not indicate he needed any clarification of the ALJ's factual premise before answering the question presented.

*See* AR at 57. "A VE's ability to answer a hypothetical without additional clarification is evidence that the hypothetical was not inappropriately vague." *Stackhouse v. Berryhill*, No. 1:17-CV-00315-MAT, 2018 WL 4292155, at *5 (W.D.N.Y. Sept. 10, 2018) (citing *Thompson v. Astrue*, No. 12-CV-111S, 2013 WL 265239, at *5 (W.D.N.Y. Jan. 23, 2013) (rejecting plaintiff's claim the RFC finding was unsupported by substantial evidence because of a vague hypothetical question posed to the VE)). Similarly, the Court notes that Plaintiff's attorney had the opportunity to question the VE about the language used in the hypothetical, but did not. *See* AR at 58. "This failure to contemporaneously question the ALJ's phrasing further confirms that the hypothetical was clear in context." *Stackhouse*, 2018 WL 4292155 at *5.

Consequently, the Court finds no merit to Plaintiff's argument the ALJ's language in the hypothetical question was vague. *Stackhouse*, 2018 WL 4292155 at *5. The Court thus further finds remand of this matter is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie S.'s motion for judgment on the pleadings [ECF No. 12] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   September  3 , 2025
         Rochester, New York

                                              HON. MEREDITH A. VACCA
                                              United States District Judge